FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 08, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICKI S.,[1] | No. 2:20-cv-00349-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 22, 23 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 22, 23.  The parties consented to proceed before a magistrate judge.  ECF No. 5.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 22, and grants Defendant's motion, ECF No. 23.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.920(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 4, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of January 27, 2016. Tr. 15, 117, 218-28.  The applications were denied initially and on reconsideration. Tr. 144-46, 148-53.  Plaintiff appeared before an administrative law judge (ALJ) on September 24, 2019; the hearing was continued

so Plaintiff could obtain an attorney, and she appeared for a second hearing with counsel on January 27, 2020.  Tr. 57-106.  On February 11, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through September 30, 2021, engaged in substantial gainful activity from January 2016 through June 2016, but there were continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, diabetes with peripheral neuropathy, cervical and lumbar degenerative disc disease (DDD) and scoliosis, degenerative joint disease (DJD) of the bilateral knees, and sleep apnea.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can stand and walk for 2 hours total in combination in an 8-hour workday; she can occasionally operate food controls; she cannot climb ladders, ropes or scaffolds, kneel, crouch or crawl; she can occasionally climb ramps and stairs, balance, and stoop; she can have no exposure to hazards such as unprotected heights and moving mechanical parts; and she cannot have concentrated exposure to any of the other environmental agents such as extreme cold and heat, humidity, wetness, noise, vibration, and pulmonary irritants.

Tr. 20.

ORDER - 7

1    At step four, the ALJ found Plaintiff is capable of performing her past

2 relevant work as a policy holder information clerk, a reservation clerk, a telephone

3 operator, and an administrative clerk.  Tr. 27.  Alternatively, at step five, the ALJ

4 found that, considering Plaintiff's age, education, work experience, RFC, and

5 testimony from the vocational expert, there were jobs that existed in significant

6 numbers in the national economy that Plaintiff could perform, such as production

7 assembler, mail clerk, and garment sorter.  Tr. 28.  Therefore, the ALJ concluded

8 Plaintiff was not under a disability, as defined in the Social Security Act, from the

9 alleged onset date of January 27, 2016, through the date of the decision.  Tr. 29.

10    On July 28, 2020, the Appeals Council denied review of the ALJ's decision,

11 Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

12 of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

13                                          **ISSUES**

14    Plaintiff seeks judicial review of the Commissioner's final decision denying

15 her disability insurance benefits under Title II and supplemental security income

16 benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

17 issues for review:

18        1.  Whether the ALJ properly evaluated the medical opinion evidence;

19        2.  Whether the ALJ conducted a proper step-two analysis;

20        3.  Whether the ALJ conducted a proper step-three analysis;

ORDER - 8

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5.  Whether the ALJ conducted a proper step-four and step-five analysis.

ECF No. 22 at 7-8.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of Jerry Seligman, M.D.  ECF No. 22 at 10-11.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment,

ORDER - 9

frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-

ORDER - 10

1  supported ... and consistent with the record ... but are not exactly the same," the

2  ALJ is required to explain how "the other most persuasive factors in paragraphs

3  (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

4  416.920c(b)(3).

5       An ALJ may credit the opinion of a nonexamining expert who testifies at

6  hearing and is subject to cross-examination.  *See Andrews v. Shalala*, 53 F.3d

7  1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st

8  Cir. 1989)).  The opinion of a nonexamining physician may serve as substantial

9  evidence if it is supported by other evidence in the record and is consistent with it.

10  *Andrews*, 53 F.3d at 1041.  Here, the ALJ found Dr. Seligman's opinion was

11  persuasive, because he reviewed the entire longitudinal record, gave a reasonable

12  explanation for his opinion, was subject to cross-examination, and has knowledge

13  of Social Security's program.  Tr. 25-26.

14       First, Plaintiff contends the ALJ erred in relying on Dr. Seligman's opinion

15  because Dr. Seligman's opinion that Plaintiff's migraines/headaches are non-

16  severe is not supported by the record.  ECF No. 22 at 11.  As discussed *infra,* the

17  ALJ's finding that Plaintiff's migraines/headaches are non-severe is supported by

18  substantial evidence in the record.  Next, Plaintiff argues Dr. Seligman did not

19  address Plaintiff's ability to ambulate effectively regarding Listing 1.04, and he

20  testified prior to Plaintiff's testimony and thus did not consider Plaintiff's

ORDER - 11

1  testimony.  *Id.*  Dr. Seligman testified that Plaintiff's impairments do not meet or

2  equal Listing 1.04.  Tr. 74.  Dr. Seligman noted Plaintiff had normal reflexes,

3  muscle mass, and strength, with only some limitations with activity and flexion.

4  *Id.*  While Dr. Seligman did not specifically discuss Plaintiff's ability to ambulate,

5  he opined Plaintiff is capable of standing/walking at least two hours in an eight-

6  hour day, which indicates he believes Plaintiff can ambulate effectively.  *See* Tr.

7  75.  Further, as discussed *infra,* there is substantial evidence that demonstrates

8  Plaintiff can ambulate effectively.  While Plaintiff argues Dr. Seligman did not

9  consider the entire record, because he rendered an opinion without listening to

10  Plaintiff's testimony, Plaintiff does not cite to any regulations or case law to

11  support her contention that Dr. Seligman should have listened to Plaintiff's

12  testimony prior to rendering his opinion.

13       Although Defendant did not set forth any arguments in response to

14  Plaintiff's arguments regarding Dr. Seligman's opinion, Plaintiff has not met her

15  burden in demonstrating the ALJ erred in relying on Dr. Seligman's opinion.  As

16  such, the ALJ did not error in relying on Dr. Seligman's opinion.  Plaintiff is not

17  entitled to remand on these grounds.

18  **B. Step Two**

19       Plaintiff contends the ALJ erred at step two by failing to find Plaintiff's

20  migraines/headaches as a severe impairment.  ECF No. 22 at 11-13.  At step two of

ORDER - 12

the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  20 C.F.R. §§ 404.1521, 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and

dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522(a),

416.922(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

The ALJ found several of Plaintiff's impairments, including her headaches,

were non-severe.  Tr. 18-19.  While Plaintiff has been diagnosed with tension

headaches and post-concussive headaches, the ALJ found the medical records

document no neurological deficits or signs and a normal brain MRI.  Tr. 18 (citing

Tr. 599, 680, 1248).  Additionally, the medical expert, Dr. Seligman, testified that

Plaintiff's headaches did not meet the duration requirement.  Tr. 18.  Plaintiff

contends her headaches are a severe impairment, and the ALJ erred in relying on

---

[3] The Supreme Court upheld the validity of the Commissioner's severity

regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987).

1    Dr. Seligman's opinion and the normal brain MRI.  ECF No. 22 at 11-13.  Plaintiff

2    argues a November 2017 MRI documented her left side migraine, as the MRI

3    found punctate subcortical white matter lesions, which could reflect migraines.

4    ECF No. 22 at 13 (citing Tr. 599).

5        Plaintiff reports she began having migraines/headaches prior to the alleged

6    onset date, and they increased in severity and frequency in 2018, when she was

7    experiencing up to four headaches per week and light sensitivity.  ECF No. 22 at

8    11 (citing Tr. 471, 485-86, 490, 614-16, 817-18, 967, 1182, 1193).  In July 2015,

9    Plaintiff reported daily headaches for twelve days which she attributed to a recent

10   shoulder injury.  Tr. 615.  Plaintiff does not cite to any evidence of her

11   experiencing headaches in 2016.  Plaintiff reported having tension headaches at

12   multiple appointments in 2017, however most appointments do not contain any

13   description of the frequency or severity of the headaches.  ECF No. 22 at 11; Tr.

14   471, 485-86, 490, 861.  In November 2017, Plaintiff was diagnosed with

15   migraines, and she reported having headaches all but six days per month, and she

16   reported experiencing blurred vision, nausea, dizziness, and sensitivity to light.  Tr.

17   673-74.  In April 2018, Plaintiff reported three days of moderate to severe

18   headaches, and her bilateral occipital nerves were tender to palpation, with

19   radiation forward, which reproduced her headache symptoms; she reported near

20   immediate resolution of her symptoms with a nerve injection.  Tr. 792, 797-98.

ORDER - 15

1    In August 2018, Plaintiff reported she had been having headaches, and

2 experiencing light sensitivity, an average of four days per week for the last two

3 weeks.  Tr. 817.  Plaintiff was given a Toradol injection and referred to physical

4 therapy.  Tr. 822.  In October 2018, Plaintiff was seen for a Toradol injection and

5 massage, but did not report the frequency of her headaches.  Tr. 964-68.  Plaintiff

6 reported having a headache for one day in December 2018.  Tr. 979-80.  In January

7 2019, Plaintiff was seen for a headache that was attributed to her sinus pain.  Tr.

8 986.  In February 2019, Plaintiff was diagnosed with episodic cluster headache, not

9 intractable, which was treated with Toradol.  Tr. 1013.  In September 2019,

10 Plaintiff reported having one to two headaches per week since a car accident in

11 July 2019.  Tr. 1182.  On November 25, 2019, Plaintiff reported having kept a

12 headache log, and having had four headaches during that month, with the

13 headaches lasting five minutes to 60 minutes, and causing throbbing pain, which is

14 partially relieved by Tylenol.  Tr. 1193.  Plaintiff also reported that even after her

15 car accident, she had "not been resting" and had been going to concerts, working

16 out, and engaging in other activities.  Tr. 1055.

17    Dr. Seligman testified he did not see a "12-month duration of severity," and

18 he noted the normal brain MRI, and therefore found Plaintiff's headaches were not

19 a severe impairment.  Tr. 76.  Both State agency consultants found Plaintiff did not

20 have a severe headache/migraine impairment.  Tr. 110, 123.  While Plaintiff has

ORDER - 16

periodically reported migraines and headaches since 2015, the impairments were attributed to varying causes, such as migraines, tension headaches, headaches related to her sinuses or cervical issues, and headaches after a car accident, Tr. 394, 749, 927, 1009, 1055, and Plaintiff reported improvement with injections, Tr. 797, 964.  Plaintiff has also reported varying symptoms caused by her headaches/migraines, including pain, nausea, light sensitivity, and memory issues. Tr. 673-74, 772, 1193.  While the record establishes a history of various headache and migraine diagnoses that have lasted a year or longer, Plaintiff does not present an argument as to how the record demonstrates headaches or migraines were a severe impairment for at least 12 months.  Plaintiff does not cite to any evidence or opinions that support the argument that Plaintiff's headaches/migraines caused more than minimal limitations that the ALJ failed to account for.  *See* ECF No. 22 at 10-11.  As such, the ALJ has not met her burden in demonstrating the ALJ erred at step two.  The ALJ's finding that's Plaintiff's migraines/headaches are not severe impairments is supported by substantial evidence.  Plaintiff is not entitled to remand on these grounds.

**C. Step Three**

Plaintiff contends that the ALJ erred by finding that Plaintiff's impairments did not meet or equal Listings 1.02A, 11.02B, or 11.14.  ECF No. 22 at 13-16.  At

step three, the ALJ must determine if a claimant's impairments meet or equal a

listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems

impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work

experience." 20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.'"

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

even considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed

criteria for disability, she will be found to be disabled.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets

each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of

a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original)

ORDER - 18

(quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id*.  However, "'[m]edical equivalence must be based on medical findings,' and '[a] generalized assertion of functional problems is not enough to establish disability at step three.'"  *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 1.02A and 11.14.  Tr. 19-20.  The ALJ did not address Listing 11.02.  First, Plaintiff argues the ALJ erred in failing to find her impairments meet or equal Listing 1.02A.  ECF

ORDER - 19

No. 22 at 13-15.  Listing 1.02A is "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints" and "[i]nvolvement of one major peripheral weight-bearing joint … resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02A.[4]  Listing 1.00B2b defines the ability to ambulate effectively as:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
>     . . .
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to

---

[4] As of April 2, 2021, Listing 1.02 was removed and replaced with Listing 1.18. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (April 2, 2021).  The Court applies the Listing that was in effect at the time of the ALJ's decision.

ORDER - 20

carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, Subpt. P., app. 1, § 1.00B2b.

The ALJ found Plaintiff does not meet Listing 1.02 because there is not objective evidence that demonstrates Plaintiff meets the criteria, including the inability to ambulate effectively. Tr. 19. Plaintiff argues she meets or equals Listing 1.02A because she has reported the need to use both rails when ascending stairs, she avoids uneven surfaces due to her knee impairment, and she cannot walk 100 feet on uneven surfaces. ECF No. 14 at 14-15 (citing Tr. 82-83). However, the ALJ gave clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's claims, as discussed *infra*. Beyond Plaintiff's reported ambulation limitations, Plaintiff does not cite to any evidence to support her argument that she is unable to ambulate effectively. There are numerous medical records that document Plaintiff having a normal gait. *See, e.g.,* Tr. 770, 795, 808, 915. Plaintiff was observed as able to easily get in and out of a chair. Tr. 1050. She reported going on walks, going to the gym three times per week and using the elliptical and doing weight training, and engaging in other activities that are inconsistent with her reported inability to ambulate effectively. Tr. 23. The ALJ's

ORDER - 21

1  finding that Plaintiff's impairments do not meet or equal Listing 1.02A is

2  supported by substantial evidence.

3      Next, Plaintiff argues the ALJ erred in failing to find her impairments equal

4  Listing 11.02B.  ECF No. 22 at 13-16.  While Listing 11.02 addresses seizures, it is

5  the most closely analogous listing for migraines.  HALLEX DI

6  24505.015(B)(7)(B)(example 2).  Listing 11.02 requires migraine headaches be

7  "documented by detailed description of a typical [migraine headache], including all

8  associated phenomena."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.  To be

9  of equal severity and duration, Listing 11.02B requires the migraines occur at least

10  once a week for at least three consecutive months, despite compliance with

11  treatment.  *Id.*  While Plaintiff argues her migraines/headaches are equal in severity

12  to Listing 11.02B, the ALJ's finding that Plaintiff's migraines/headaches are not

13  severe impairments is supported by substantial evidence, as discussed *supra.*

14  Further, while Plaintiff cites to records that demonstrate intermittent complaints of

15  headaches/migraines, the cited records do not document Listing-level frequency on

16  an ongoing basis.  ECF No. 22 at 15-16.  For example, Plaintiff points to two

17  records over a year apart to demonstrate she had weekly headaches but does not

18  cite to any records that document the frequency of headaches in that year gap.  *Id.*

19  As such, Plaintiff has not met her burden in demonstrating her impairments equal

20  Listing 11.02B.

ORDER - 22

Lastly, Plaintiff argues the ALJ erred in failing to find her impairments meet or equal Listing 11.14.  ECF No. 22 at 13-16.  Listing 11.14 requires that the claimant's peripheral neuropathy is characterized by A or B:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation in physical functioning, and in one of the following:
> 1. Understanding, remembering, or applying information; or
> 2. Interacting with others; or
> 3. Concentrating, persisting, or maintaining pace; or
> 4. Adapting or managing oneself

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14.

The ALJ found Plaintiff does not meet or equal Listing 11.14, because there is not objective evidence to establish Plaintiff meets the criteria, and there is evidence Plaintiff is able to stand, balance, ambulate, and use her upper extremities effectively and without significant pain.  Tr. 20.  Plaintiff argues the ALJ erred in failing to find her impairments meet or equal Listing 11.14 but does not present any argument as to how she meets the criteria.  ECF No. 22 at 13-16.  The ALJ's finding that Plaintiff can stand, balance, ambulate, and use her upper extremities effectively is supported by substantial evidence, thus the ALJ did not error in finding Plaintiff does not meet or equal Listing 11.14. *See* Tr. 20, 442, 770, 795, 808, 915, 1050.  Plaintiff is not entitled to remand on these grounds.

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 22 at 16-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

ORDER - 24

symptom claims)).  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

1  statements concerning the intensity, persistence, and limiting effects of her

2  symptoms were not entirely consistent with the evidence.  Tr.  21.

3      *1.  Inconsistent Objective Medical Evidence*

4      The ALJ found Plaintiff's symptom claims were inconsistent with the

5  objective medical evidence.  Tr. 21-24.  An ALJ may not discredit a claimant's

6  symptom testimony and deny benefits solely because the degree of the symptoms

7  alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

8  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

9  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

10  However, the objective medical evidence is a relevant factor, along with the

11  medical source's information about the claimant's pain or other symptoms, in

12  determining the severity of a claimant's symptoms and their disabling effects.

13  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

14      The ALJ found the medical evidence is not consistent with Plaintiff's

15  complaints of disabling physical limitations.  Tr. 21.  At multiple appointments,

16  Plaintiff reported significant subjective symptoms, but her physical examinations

17  were generally normal.  Tr. 21-23.  Plaintiff generally had normal range of motion,

18  strength, reflexes, and sensation, and negative straight leg raise tests.  Tr. 21, 23,

19  434-36, 442-44, 454-55, 496, 849, 927, 930, 1142-45.  Plaintiff intermittently had

20  some abnormal findings, such as restricted lumbar range of motion, however the

abnormalities were accompanied by multiple normal findings, and were followed

with normal examinations.  Tr. 21, 437-38, 442-44, 446.  Plaintiff was generally

observed as having a normal gait and no difficulty with ambulation.  Tr. 22, 438,

795, 1028, 1042, 1050.  Plaintiff reported some improvement with treatment,

including physical therapy, orthopedic adjustment, and injections.  Tr. 22, 23, 443,

799, 801, 1146-1160.  A nerve conduction study demonstrated mild to moderate

peripheral neuropathy, possibly related to her diabetes, however her diabetes was

managed without medication and was noted as doing well in September 2019.  Tr.

24, 892, 919, 1026, 1109.  While Plaintiff testified she fell due to her left knee

impairment and foot numbness, the ALJ noted the records document incidences

where Plaintiff fell when she stepped on a toy, and incidences when she tripped or

missed a step on stairs, but during the appointments when Plaintiff discussed the

falls, she did not report a knee buckling or foot numbness.  Tr. 24, 450, 482, 487,

689.

Plaintiff argues her allegations are consistent with the objective evidence.

ECF No. 22 at 18-19.  Plaintiff argues the medical records contain abnormal

findings, including decreased sensation, limited range of motion, tenderness, and

pain, there is diagnostic imaging to document her diagnoses, and there is

documentation of her headaches.  *Id.*  While Plaintiff cites to evidence that

demonstrates intermittent symptom aggravation, such as knee pain causing

Plaintiff to decrease her walking in August 2017, Tr. 491, the ALJ's findings are

consistent with the record as a whole.  For example, in 2019, Plaintiff reported

walking and exercising in the pool; she reported she was able to become "way

more active" and was walking 20,000 steps two to three times per week, as well as

going to the gym a few days per week, and boating. Tr. 891, 897.  While Plaintiff

cites to abnormal lumbar range of motion, Plaintiff had normal range of motion at

numerous visits.  *See, e.g.,* Tr. 434, 469, 477, 809-10.  On this record, the ALJ

reasonably rejected Plaintiff's claims as inconsistent with the objective evidence.

This was a clear and convincing reason, along with the other reasons offered, to

reject Plaintiff's symptom claims.

### 2.  Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

activities of daily living.  Tr. 22-25.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.  Additionally, the ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

The ALJ found Plaintiff engaged in multiple activities throughout the relevant time period that were inconsistent with her allegations of disabling limitations.  Tr. 22-25.  Plaintiff reported being on her feet for long periods, while getting ready for her daughter's wedding.  Tr. 22 (citing Tr. 438).  Plaintiff also reported staying active and taking short walks, and going to the gym three times per week and using the elliptical machine, as well as doing weight training.  Tr. 23 (citing Tr. 1050, 1092).  Plaintiff reported lifting a bicycle in November 2016, vacationing in Arizona, during which she helped move furniture and appliances, in May 2018, boating in February 2019, and going to concerts and working out in September 2019.  Tr. 24 (citing Tr. 463, 803, 884, 894, 1055).  The ALJ also noted Plaintiff stated in her function report she cares for her granddaughter and cats,

ORDER - 29

1 handles house cleaning, shopping, and yardwork, and is able to drive, go out alone,

2 and manage financial accounts.  Tr. 25 (citing Tr. 298-305).

3      Plaintiff also reported caring for her granddaughter full-time prior to her

4 granddaughter beginning school.  Tr. 25, 78.  She testified she fed her, supervised

5 her, and engaged in activities like coloring with her and taking her outside.  Tr. 78.

6 Her son assisted with the childcare half of the time.  Tr. 78-79.  The ALJ also

7 noted Plaintiff reported leaving her home only once per month, which was

8 inconsistent with Plaintiff's frequency of treatment, and care for her grandchild.

9 Tr. 21.  Plaintiff contends the ALJ erred in finding Plaintiff's care for her

10 granddaughter and the activities like moving furniture were inconsistent with her

11 claims, as she injured herself when moving the furniture, and she reported needing

12 help caring for her granddaughter and only supervising her.  ECF No. 22 at 19.

13 However, the ALJ reasonably found that Plaintiff's ability to watch her

14 granddaughter full-time, while also engaging in the other activities outlined by the

15 ALJ, are inconsistent with her allegations of disabling limitations, including

16 needing to lay down multiple times per day for up to one and a half hours at a time.

17 Tr. 25.  This was a clear and convincing reason, supported by substantial evidence,

18 to reject Plaintiff's symptom claims.

19

20

ORDER - 30

3. *Work History*

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's work history. Tr. 21-25. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling). Additionally, Plaintiff's own perception of her ability to work is a proper consideration in determining credibility. *See* Cause No. 2:16-cv-00402-MKD, *Barnes v. Comm'r of Soc. Sec.*, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief indicates her allegation of symptoms precluding work are not credible."). Additionally, evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that she is unable to work. *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529 (work record can be considered in assessing credibility); 20 C.F.R. § 416.929 (same).

The ALJ noted Plaintiff worked during multiple time periods during the relevant adjudicative period. Tr. 21-25. After a car accident, Plaintiff reported in

March 2016 that she felt ready to return to part-time work, and she was expected to be ready to return to full-time work in three weeks. Tr. 21 (citing Tr. 434-35). Plaintiff stopped working as a security guard and reported it was due to her pain, however Plaintiff reported feeling ready to return to work in June 2016. Tr. 21-22. Some of Plaintiff's attempts to return to work ended due to symptom worsening. Tr. 22, 453-54. Plaintiff was also compensated for caring for her granddaughter from 2017 through 2019; Plaintiff testified she watched her granddaughter full-time until her granddaughter started school in September 2019, when she began watching her part-time. Tr. 25. Further, the ALJ noted that Plaintiff had an inconsistent work history, even prior to the alleged onset date, which suggests her ongoing unemployment/underemployment is likely due to something other than her current medical conditions. Tr. 25. While Plaintiff alleges disability beginning in January 2016, she had seven years prior to 2016 during which she had no earnings, and multiple years during which her earnings did not amount to substantial gainful activity. Tr. 243-44. Plaintiff earned more in 2016 than she did in the two years preceding the date she alleges she became disabled. *See id.*

On this record, the ALJ reasonably concluded that Plaintiff's work history is inconsistent with her allegations. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

ORDER - 32

**E. Steps Four and Five**

Plaintiff contends the ALJ erred at steps four and five because his findings were based on an improper RFC formulation.  ECF No. 22 at 20-21.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering Plaintiff's symptom claims.  *Id.*  For reasons discussed throughout this decision, the ALJ's adverse credibility finding is legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff capable of performing her past relevant work and other work in the national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 33

1   The District Court Executive is directed to file this Order, provide copies to

2   counsel, and **CLOSE THE FILE.**

3       DATED December 8, 2021.

4                           *s/Mary K. Dimke*
                          MARY K. DIMKE
5               UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 34